# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

JAMES J. BENJAMIN, JR.
2128728091/fax: 2128728241
jbenjamin@akingump.com

April 15, 2008

VIA MESSENGER

Hon. Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Jonathan Daws*
    Cr 02-589 (S-2)

Dear Chief Judge Dearie:

On behalf of my client, Jonathan Daws, I write to respectfully request that this Court enter an order terminating Mr. Daws' term of probation. This request is based on four factors:

a. Mr. Daws' excellent record while under government supervision, including significant and ongoing voluntary community service well in excess of the court-ordered obligation;

b. Mr. Daws' current employment, which requires business travel that is made difficult by his status as a probationer;

c. Mr. Daws' continuing extraordinary support of his wife, Lisa, as she continues to struggle to overcome her health issues; and

d. the fact that Jonathan and Lisa would like to move to the Pacific Northwest in part because of Lisa's health issues – a move that would be easier to accomplish if Jonathan were no longer on probation.

Mr. Daws recently passed the halfway mark of his three-year period of probation. The government, Mr. Daws' supervising probation officer in Texas, and the probation office in the Eastern District of New York have each advised me that they have no objection to this request.

## Background

As Your Honor may recall, in June 2003 Mr. Daws was added to the *Elgindy* case via a superseding indictment and was released on bail subject to pretrial supervision. As was later

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
Attorneys at Law

Hon. Raymond J. Dearie
April 15, 2008
Page 2

reflected in his PSR, Mr. Daws complied with all terms of his pre-trial supervision without incident.

In April 2005, Mr. Daws pleaded guilty to one count of conspiracy to commit insider trading. Mr. Daws' criminal conduct was limited in comparison to the overall conduct at issue in the *Elgindy* case. As was reflected in Mr. Daws' plea agreement, and as was made clear at his sentencing, Mr. Daws' guilty plea related only to limited instances of insider trading with respect to two stocks. Further, as was shown at sentencing, there were a number of mitigating circumstances surrounding Mr. Daws' offense conduct.

On August 16, 2006, this Court downwardly departed from the stipulated Sentencing Guidelines range on two grounds: aberrational conduct and family circumstances. (Sentencing Tr. 40-41). The Court sentenced Mr. Daws to a term of three years' probation with a special condition of 500 hours' community service plus a $50,000 fine. The Court's comments at sentencing made clear that the Court had taken account of Mr. Daws' extraordinary efforts to support his wife, Lisa, during a prolonged and difficult health crisis, as well as the numerous and overwhelmingly positive letters that had been submitted by Mr. Daws' family and friends. In departing downward, the Court indicated that it was reposing trust in Mr. Daws. Since his sentencing, Mr. Daws has been supervised by the Probation Office in his district of residence, which is the Northern District of Texas.

### Mr. Daws' Conduct While On Probation

Today, nearly 20 months after Mr. Daws' sentencing, I am pleased to report that Mr. Daws has fully lived up to the confidence that the Court placed in him at sentencing. Mr. Daws promptly paid his $50,000 fine. In May 2007, he successfully completed his 500 hours of community service by working at a soup kitchen called SoupMobile, where he performed construction and maintenance work, and at a second organization called Reading and Radio Resource, where he edited audio recordings of books for vision-impaired individuals. In fact, Mr. Daws became so engaged in the Reading and Radio Resource work that even after completing his imposed obligation of 500 hours he has continued his work and has completed another 115 hours on a purely voluntary basis. Since he completed his court-imposed obligation in May 2007, Mr. Daws has averaged about 11.5 hours per month of volunteer work for Reading and Radio Resource. He continues to be actively engaged in his volunteer work on an ongoing basis and intends to stay involved in the long term. Because Mr. Daws does his work from home (the organization sends him DVDs to be edited), he will be able to continue this work even if he moves away from Dallas, and fully intends to do so.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Hon. Raymond J. Dearie
April 15, 2008
Page 3

In addition, I understand that Mr. Daws has maintained good relations with his probation officer and has complied with all conditions of probation without incident. Altogether, Mr. Daws has now been under supervision for more than four and a half years, including his pre-trial release from June 2003 through August 2006 and his period of probation from August 2006 to the present. Throughout that period, Mr. Daws has proved himself to be fully compliant with all conditions of release.

Mr. Daws is presently employed by a company that provides software and administrative support to investment funds. Mr. Daws' job duties include providing accounting and financial consulting, developing a software program for partnership accounting, and also developing software to help scan the marketplace for possible investment ideas. Currently, Mr. Daws' software programs are used by funds in Dallas and Toronto, and his firm hopes to expand their client base in the near future. To date, Mr. Daws has been attempting to assist the Toronto-based fund over the phone, but it would be far better if he could travel to Toronto as needed to train the staff and support the software that he has developed. In addition, Mr. Daws' company is attempting to market the software to a third investment fund in London. It would be helpful if Mr. Daws were able to travel to London to assist in that effort.

Of special importance, Mr. Daws has continued to serve as a bulwark of support and assistance for his wife Lisa. As described in a separately-filed sealed submission, Lisa's condition has generally improved since the time of sentencing, but she remains susceptible to severe downturns and Jonathan has provided truly exceptional support for her. While Lisa is still receiving regular medical care, I am happy to report that she and Jonathan were able to have a son who was born in late 2007.

As is explained in the separately-filed sealed submission, Jonathan and Lisa would like to relocate to the Pacific Northwest, mainly so that Lisa can be near to her two brothers. Mr. Daws will be able to continue his work at the same company if he is able to move. Although Mr. Daws' supervising probation officer in Texas has indicated that she would not object, it would be easier to arrange the move if Mr. Daws were no longer on probation. In particular, Mr. Daws would have to apply to be accepted by the local probation office and there is no guarantee that they would accept him. At a minimum, that process could introduce additional delay and uncertainty into the move.

### Mr. Daws' Request For Early Termination Of Probation

Under 18 U.S.C. § 3564(c), the Court may terminate a term of probation after the expiration of one year. Further, under Fed. R. Crim. P. 32.1(c)(2), the Court may modify the terms of probation without a hearing if the relief sought is favorable to the probationer and the

Case 1:02-cr-00589-RJD   Document 720   Filed 04/15/08   Page 3 of 6 PageID #: 4002

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Hon. Raymond J. Dearie
April 15, 2008
Page 4

government does not object. In *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997), the Second Circuit noted that "[o]ccasionally, changed circumstances – for instance, exceptionally good behavior by the defendant," will justify termination of probation or an easing of the conditions of supervision.

In *United States v. Schuster*, No. 01 Cr. 67 (TPG), 2002 WL 31098493 (S.D.N.Y. Sept. 19, 2002), the court, over the government's objection, granted early termination of the defendant's probation when the defendant had reached the halfway point of his period of supervision. The court explained that the defendant had already paid a high price, including disbarment and a total of $51,000 in government financial penalties, and that "defendant's conduct has been exemplary in that he has complied in every way with the conditions of probation and has avoided any semblance of further unlawful conduct." *Id.* at *1. The court noted that the defendant had also encountered difficulty in trying to find employment while on probation. *Id.* On that record, the court concluded that "Defendant has no need of further probation supervision. Continued probation has no real value as far as law enforcement or any other community interest is concerned." *Id.*[1]

Given that Mr. Daws has now been under government supervision for more than four and a half years without incident and has completed all special conditions of his probation, and in light of his exceptionally constructive behavior while under supervision, including the fact that he is gainfully employed and living in a stable family situation, it is my belief that probation is no longer serving any constructive purpose for Mr. Daws, the government, or society at large. More specifically, I respectfully submit that probation should be terminated for the following reasons:

---

[1] *United States v. Medina*, 17 F. Supp. 2d 245 (S.D.N.Y. 1998), and *United States v. McKay*, 352 F. Supp. 2d 359 (E.D.N.Y. 2005), in which courts denied motions for early termination of supervised release, are distinguishable. In both cases, defendants moved to terminate a remaining period of supervised release before even reaching the halfway point of the term of supervised release. Further, the underlying offenses were plainly more serious than the instant case and the supporting circumstances were less compelling than those presented here. Likewise, *United States v. Scheckley*, 129 F.3d 114, 1997 WL 701370 (2d Cir. 1997), is distinguishable. There, the Second Circuit affirmed a denial of a request for early termination of supervised release when the defendant, who had been convicted of serious drug offenses and had been sentenced to two years' imprisonment, lacked steady employment, had demonstrated only "'average performance under supervision,'" and "had 'not demonstrated any special hardship or compelling reason to reduce his term of supervised release.'" *Id.* at *1 (quoting lower court decision).

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
─────────────── Attorneys at Law

Hon. Raymond J. Dearie
April 15, 2008
Page 5


*First*, Mr. Daws' significant and ongoing voluntary community service is exceptional and demonstrates to the Court that Mr. Daws is functioning as a contributing member of society with little if any need for ongoing supervision.

*Second,* the fact that Mr. Daws is on probation makes it difficult for him to travel on behalf of his current job. Although Mr. Daws' probation officer has been fair and reasonable about approving travel, there is a certain amount of lead time that is required for all travel approvals, which makes business trips inconvenient and difficult to arrange. Further, it is Mr. Daws' understanding that immigration rules in Canada would make it difficult and time consuming for Mr. Daws to obtain permission to travel there while he is on probation. International travel also requires Court approval, adding an additional layer of complication and further diminishing the utility of business travel.

*Third*, Mr. Daws' exceptional support of Lisa during the period of probation demonstrates to the Court that Mr. Daws is continuing to play an exceptional role in supporting his family. Mr. Daws' continuing support of Lisa also confirms the wisdom of the Court's original sentencing decision.

*Fourth*, for reasons explained more fully in the accompanying sealed submission, Jonathan and Lisa would like to relocate to the Pacific Northwest. It would be less convenient for them to do so if Jonathan were still subject to the restrictions of probation.

### Conclusion

For the foregoing reasons, I respectfully ask the Court to terminate Mr. Daws' remaining period of probation pursuant to 18 U.S.C. § 3564(c). I have discussed this application with A.U.S.A. Jon Nathanson; with Mr. Daws' supervising probation officer, U.S.P.O. Sherry Britt in the Northern District of Texas; and with senior U.S. Probation Officer Richard Azarian in the Eastern District of New York. All three individuals have informed me that their offices have no objection to this request.

Thank you for considering this request.

Respectfully,

*[signature]*

James J. Benjamin, Jr.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Hon. Raymond J. Dearie
April 15, 2008
Page 6

cc:   A.U.S.A. Jon Nathanson
      U.S.P.O. Sherry Britt (N.D. Tex.)
      S.U.S.P.O. Richard Azarian (E.D.N.Y.)